(169 App. Div. 619)

In re FORRESTER.

(Supreme Court, Appellate Division, First Department.   November 5, 1915.)

ATTORNEY AND CLIENT ☞42—DISBARMENT—MISCONDUCT.

 Where an attorney employed by a wife to obtain a divorce from her husband, through a detective engaged another woman to entrap the husband into adultery, and after she was successful verified a complaint seeking divorce on that ground, which set forth that the acts were not with the procurement of the wife or her agent, and allowed the wife and detective to testify to that effect, he was guilty of misconduct warranting disbarment.

 [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. ☞42.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of the application for the disbarment of James Forrester, an attorney. On the report of the official referee on charges of professional misconduct. Respondent disbarred.

See, also, 165 App. Div. 978, 150 N. Y. Supp. 1086.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, and DOWLING, JJ.

Einar Chrystie, of New York City (Charles D. Miller, of New York City, of counsel), for petitioner.

R. M. S. Putnam, of New York City, for respondent.

PER CURIAM. The charges against this respondent, and of which he has been adjudged guilty by the report of the official referee, are of the most serious character.

It appears that the respondent was retained in the year 1911 by a Mrs. Helen H. Earle to obtain for her a divorce from her husband, from whom she had lived separate and apart for about 12 years under a decree for a separation. The husband, Charles Earle, lived at that time in Mt. Vernon, in Westchester county, and there appears to have been no existing ground upon which a judgment for divorce could have been obtained—certainly no such ground was known to Mrs. Earle or the respondent. The latter employed a private detective named Charles B. Trever to seek out and obtain, if possible, evidence upon which an action for divorce could be based. Trever proceeded to Mt. Vernon, where he took a room and exhausted every effort in the attempt to discover evidence of marital infidelity on the part of the husband. Despairing of discovering what apparently did not exist, Trever employed a woman to make the husband's acquaintance, and to seduce him into committing the fault which alone in this state constitutes a ground for an absolute divorce. She was ultimately successful, and the husband on two occasions committed acts of adultery with her under conditions prearranged between Trever and the woman which made it possible to obtain evidence. Trever regularly reported in writing to respondent his actions as above recited, inclosing copies of the reports made to him from time to time by the woman, detailing with great particularity the progress of her efforts to induce the husband to commit the acts of adultery. The respondent now seeks to make it appear that he did not read the reports delivered to him by Trever, which stated in great detail the successive steps resorted to to entrap Earle. His testimony to this effect is quite incredible, and the able analysis of the testimony by the official referee demonstrates its falsity.

Having thus permitted his agent, Trever, to create evidence against Earle, respondent in August, 1911, began an action against him in the Supreme Court in behalf of his wife asking for an absolute divorce. The first complaint drawn by respondent was defective, and he prepared an amended complaint, which he verified as attorney. In this amended complaint it was alleged that the defendant had committed adultery with a woman not yet identified, and that such acts were and each of them was committed and done without the knowledge, consent, privity, and procurement of the plaintiff. These allegations were

false, and were known to the respondent to be false when he verified the amended complaint. The woman was not unidentified, but on the contrary, respondent knew exactly who she was, and the adultery had been committed with the connivance, consent, privity, and procurement of respondent, acting as the agent and attorney for the plaintiff.

The defendant interposed an answer, in which the defense of procurement was specifically set up. A few days before the cause was to come up for trial the attorney for the defendant notified respondent in writing that they had knowledge that the alleged acts of adultery had been committed by procurement of plaintiff or her agents, and demanding that the private detective and his woman accomplice be produced on the trial. Respondent had retained Joseph R. Swan, Esq., as counsel to try the case; but after a conference had by Mr. Swan with one of the husband's attorneys, he dropped out of the case, and another counsel was retained. He called upon the husband's attorneys, and after a conference with them signed a stipulation waiving all claim for alimony and counsel fees, whereupon he was advised that the attorneys for the husband would contest the case no further. This was undoubtedly communicated to the respondent. The case came on for trial on January 15, 1912, and was conducted by a Mr. Menzel as counsel for the plaintiff; respondent sitting by him and assisting in the trial. There was no appearance on the part of the husband. Thus sitting by and participating in the trial, respondent permitted his client, Mrs. Earle, to swear that the adultery complained of had not been committed by her consent, connivance, privity, or procurement. This was false, and was known to respondent to be false, although it is possible that Mrs. Earle herself believed it to be true. He also permitted Trever, the detective, to falsely swear that the adultery complained of was committed with a woman whose name was unknown to him and that he did not know who the woman was. This the respondent knew to be false. As a result of this false testimony a decree of divorce was granted.

Other instances are proven wherein the respondent either gave false evidence himself, or sat by and permitted his agent, Trever, to swear falsely. It is unnecessary to state these in detail. Enough has already been said to demonstrate respondent's gross professional misconduct. Besides his denials, to which we give no credence, we are asked to regard the respondent's conduct leniently, because he has been given to drinking to excess, and has had little experience in divorce litigation. We fail to see that either of these circumstances is entitled to any weight.

The respondent is evidently an unfit person to be permitted to remain a member of the bar. He is accordingly disbarred.